# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ROGER RANDOLPH,

    Plaintiff,

v.

RENE BAKER, et al.,

    Defendants.

Case No.: 3:17-cv-00506-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 34

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 34, 34-1 to 34-5, ECF No. 43-1[1].) Plaintiff filed a response. (ECF No. 36.) Defendants filed a reply. (ECF No. 38.) Plaintiff filed a sur-reply. (ECF No. 40.)

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 7.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center

---

[1] ECF No. 43-1 is the unredacted version of Defendants' Exhibit B that was filed under seal. ECF No. 43-1 contains the unredacted list of the inmates that appeared on the list from Chaplain Anthony Carrasco as being approved to attend the Summer Aleph Rabbi's visits on July 28, 2016.

(LCC). (*Id.*) Defendants are LCC Chaplain Carrasco, LCC Senior Correctional Officer Steve Dalton, LCC Correctional Officer Jeffrey Chandler, LCC Warden Renee Baker, and LCC Case Worker Ray East.

On screening, Plaintiff was allowed to proceed with the following claims: (1) In Count I: an equal protection claim against defendants Dalton, Carrasco, Chandler, Baker and East, based on allegations that Plaintiff was refused access to a Jewish religious meeting, while other Jewish inmates were allowed to attend; (2) Count II: a First Amendment free exercise of religion claim against Dalton, Carrasco, Chandler and Baker, based on allegations that he was prevented from adequately practicing his religion by being denied access to the religious meeting; (3) Count III: an equal protection claim against Baker, Chandler, Dalton and Carrasco, based on allegations that Plaintiff was denied entry to the religious meeting based on his race; (4) a Nevada intentional infliction of emotional distress (IIED) claim against Baker, Carrasco, Chandler and Dalton based on the same allegations; and, (5) a Nevada negligence claim against Baker, Chandler, Dalton and Carrasco based on the same allegations. (Screening Order, ECF No. 7.)

Plaintiff alleges that he is black, African American and Jewish. Plaintiff avers that defendant LCC Chaplain Carrasco invited Plaintiff and several other Jewish inmates to attend a meeting with visiting Jewish rabbis on July 28, 2016. On the day of the visit, Plaintiff went to the visiting room with his invitation in hand, only to be denied entrance by defendant Dalton. Dalton accused Plaintiff of creating a fake invitation and told Plaintiff he had spoken to Carrasco and no such invitation had been extended. Other Jewish inmates were nevertheless allowed to gain entry into the religious meeting. Later, it came to light that Dalton had lied about having spoken to Carrasco about Plaintiff's invitation. Plaintiff claims that Chandler also took part in lying about whether or not Carrasco had sent Plaintiff an invitation. East, through the informal grievance

process, confirmed Dalton lied about his conversation with Carrasco, stating: "at no time did C/O Dalton speak with the Chaplain." Baker also denied Plaintiff's grievance, stating it was Plaintiff's responsibility to ensure that Carrasco included his name on the list of invitees.

Defendants Baker, Chandler, Dalton and East are represented by the Nevada Attorney General's Office, and filed an answer and the instant motion for summary judgment. Service was not accepted by the Nevada Attorney General's Office for defendant Carrasco, but Carrasco was subsequently served and filed a response, in the form of an affidavit, to the complaint. (*See* ECF Nos. 20, 27, 28.)

Defendants argue that they are entitled to summary judgment because they did not act with the intent or purpose to discriminate against Plaintiff, and his religious practice was not substantially burdened. In addition, they contend that Plaintiff cannot establish the elements for his State law IIED and negligence claims. They further contend that Baker and East did not personally participate in the alleged acts. Finally, they claim they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex*, 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson*, 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot

1  establish an element essential to that party's case on which that party will have the burden of proof

2  at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

3        If the moving party satisfies its initial burden, the burden shifts to the opposing party to

4  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

5  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

6  dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

7  be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W.*

8  *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation

9  marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying

10  solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587.

11  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth

12  specific facts by producing competent evidence that shows a genuine dispute of material fact for

13  trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

14

15  **A. FACTS**

16        Chaplain Carrasco invited Plaintiff to attend the Summer Rabbis' Visit held on July 28,

17  2016. (ECF No. 34-1 at 2). Plaintiff's name was not on the list of authorized attendees for the event.

18  (Ex. B, redacted version filed in camera).

19        According to Plaintiff, when he went to the visiting room with his invitation, he was denied

20  admittance by Dalton, who accused Plaintiff of presenting a fake invitation. Chandler told Dalton

21  that Plaintiff's name was not on the list. Plaintiff also claims that Dalton and Chandler said they

22  spoke with Carrasco and Carrasco said that he did not invite Plaintiff. He further alleges that East

23  responded to his informal level grievance on September 6, 2016, that Dalton did not speak with

1  Carrasco. Baker responded to his first level grievance on September 22, 2016, and stated that it

2  should be Plaintiff's duty or responsibility to make sure the chaplain included his name on the list.

3      According to Defendants, for safety and security, only authorized attendees are permitted

4  to attend religious events. (Carpenter[2] Decl., ECF No. 34-3 ¶ 14.) In addition, Defendants present

5  evidence that six out of the 24 people authorized to attend the event were African American. (ECF

6  No. 34-3 ¶ 13.)

7      Defendants also present evidence that Plaintiff's name was on the list of authorized

8  attendees for a different Jewish event (Blowing of the Shofar), held shortly after the Summer

9  Rabbis' Visit. (ECF No. 34-4 at 2.) Plaintiff requested and was been able to attend other Jewish

10 events. (ECF No. 34-5.)  Plaintiff contends that his ability to attend these other events is not

11 relevant to the denial of attendance at the July 28, 2016 event, but he does not dispute that he was

12 permitted to attend these other religious events.

13 **B. Equal Protection**

14     Plaintiff has two equal protection claims: (1) that he was not allowed to attend the religious

15 event while other Jewish inmates were, and (2) that he was treated differently because of his race

16 as he was the only African American Jewish inmate not permitted to attend the religious event.

17 After setting forth the applicable legal standard, the court will address each claim, in turn.

18 ///

19 ///

20 ///

21 ///

22 ///

23

---

[2] Tara Carpenter is an associate warden at LCC.

### 1. Legal Standard

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const. amend XIV, § 1. It "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (internal quotation marks omitted)). "Although the Equal Protection Clause ensures similarly situated persons are treated alike, it does not ensure absolute equality." *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) (citation omitted). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace*, 705 F.3d at 1030 (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Prisoners are protected by the Equal Protection Clause from intentional discrimination on the basis of their religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citation omitted), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

Here, Plaintiff is not claiming that he was discriminated against *because of his religion*, but that he was treated differently from other Jewish inmates who were allowed to attend the religious event. Where state action does not implicate a protected class, a plaintiff can establish a "'class of one" equal protection claim by demonstrating that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference

in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

In addition, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Mitchell v. Washington*, 818 F.3d 436, 444 (9th Cir. 2016); *Harrington v. Scribner*, 785 F.3d 1299 (9th Cir. 2015). In *Johnson v. California*, 543 U.S. 499 (2005), "the Supreme Court was unequivocal that strict scrutiny is the proper standard of review for an equal protection challenge to a race-based prison policy." *Harrington*, 785 F.3d at 1305 (citing *Johnson*, 543 U.S. at 515). This requires "the government to prove that the measures are narrowly tailored to further a compelling government interest." *Id*. at 1306 (quoting *Johnson*, 543 U.S. at 509).

**2. Denial of Access to Religious Event While Other Jewish Inmates Were Allowed to Attend**

Defendants argue that Plaintiff was not allowed to attend the Summer Rabbis' Visit because his name was mistakenly left off the list of authorized attendees, and for safety and security reasons only those inmates whose names appear on the list are permitted entry into religious events. They provide evidence that this is necessary to account for the whereabouts of all inmates and for count purposes. (Carpenter Decl., ECF No. 34-3 ¶ 14.) In addition, they point out that Plaintiff's name was on the authorized list for other Jewish religious events. In fact, his name appeared on the list for the Blowing of Shofar event, which was compiled two days prior to the Summer Rabbis' Visit list. Thus, Defendants have presented evidence that there was a rational basis for excluding Plaintiff from the Summer Rabbis' Visit event.

To defeat Defendants' motion, Plaintiff must present evidence that creates a genuine dispute of material fact as to whether he was intentionally treated differently from others similarly situated and whether there was rational basis for the difference in treatment.

Plaintiff's verified complaint contends that Chandler told Dalton that Plaintiff's name was on the list; that Dalton accused Plaintiff of presenting a false invitation; and, that Chandler and Dalton told Plaintiff they contacted Carrasco and he said that he did not invite Plaintiff. Plaintiff points to the affidavit filed by Carrasco in response to the complaint, where Carrasco states that he was never asked about Plaintiff's invitation or religion by any staff member, and if he had known that Plaintiff was being questioned about his being Jewish or about whether he could attend, he would have insisted on Plaintiff being accepted to attend the event. Carrasco's affidavit also states that any questions regarding Plaintiff's declared Jewish faith could have easily been looked up on the caseworker's computer in the unit. (ECF No. 28; ECF No. 36 at 9-14.)

While Defendants claim that Plaintiff was not admitted to the event because his name was mistakenly left off of the list, Plaintiff presents evidence that Dalton and Chandler falsely told Plaintiff they contacted Carrasco and Carrasco confirmed Plaintiff had not been invited. Plaintiff also presents evidence that if his name was not on the list, Dalton and Chandler could have easily confirmed Plaintiff should have been allowed to attend by checking the computer or contacting Carrasco. Carrasco maintains he was never contacted.

This is sufficient to create a genuine dispute of material fact as to whether Plaintiff was intentionally treated differently from other Jewish inmates allowed to attend the event because his name did not appear on the list, at least as to Dalton and Chandler.

Plaintiff's own evidence admits that Carrasco did not intentionally treat Plaintiff differently. The undisputed evidence demonstrates that Carrasco intended for Plaintiff to be invited

9

to the event, and did invite Plaintiff. Carrasco says he was never contacted by the staff members on this subject, and neither Plaintiff nor the other defendants provide any evidence to rebut this. Carrasco states if he had been contacted, he would have insisted Plaintiff be allowed to attend. While Carrasco did not move for summary judgment, the court finds that the evidence before the court entitles Carrasco to summary judgment as to all of the claims asserted against him, as it is clear Carrasco had no involvement in the decision to deny Plaintiff entry to the July 28, 2016 event.

The court will now address East and Baker. Plaintiff alleges that East responded to his informal level grievance on September 6, 2016, and said that Dalton did not speak with Carrasco. This is consistent with Carrasco's affidavit, and is not evidence that East had any involvement in denying Plaintiff admission to the religious event. Plaintiff alleges that Baker responded to his first level grievance on September 22, 2016, and stated that it should be Plaintiff's duty or responsibility to make sure the chaplain included his name on the list.

The court disagrees with Defendants' theory that responding to a grievance can never subject a defendant to liability under section 1983; however, the court agrees that in this instance, East's and Baker's responses do not subject them to liability. East responded to the grievance on September 6, 2016. Baker responded September 22, 2016. The religious event that Plaintiff claims to have been denied admission took place on July 28, 2016. Neither East nor Baker could have been involved in denying Plaintiff admission to the July 28, 2016 religious event, as it had already taken place when they were made aware of it. This is in contrast to a case, for example, involving an ongoing denial of medical care, where an inmate complains in a grievance that he is not getting the requested care, and his grievance denied. In such a case, there is evidence that the grievance responder was put on notice of the alleged constitutional violation and did nothing to intervene. This could constitute evidence of deliberate indifference under the Eighth Amendment. Another

contrasting example is an inmate that alleges an ongoing failure to protect issue and alerts prison officials via grievance of a risk to his safety at the hands of another inmate or staff member. If that prison official does nothing to alleviate risks to the inmate's safety, and then the inmate is harmed, there is evidence in support of a failure to protect claim against the grievance responder. Here, on the other hand, East and Baker did not participate in the denial of access to the religious event, and there is nothing East or Baker could have done to remedy the alleged constitutional violation when they were alerted to it in the grievance.

Therefore, summary judgment should be granted in favor of East and Baker. East is only named in Count I, but this analysis also applies to the remaining claims asserted against Baker.

### 3. Equal Protection—Race

Plaintiff alleges that he was excluded from the religious event on the basis of his race, alleging that he would have been the only African American inmate attending the religious event.

Defendants present evidence that that six out of the 24 inmates on the authorized list for the Summer Rabbis' Visit were African American. Plaintiff presents no evidence to refute that presented by Defendants. Plaintiff states briefly that blacks that exercise their Jewish faith are looked down on by prison officials, but provides no facts or other evidence to substantiate this conclusion. Therefore, he has not raised a genuine dispute of material fact as to whether Defendants intentionally treated him differently because of his race. Therefore, summary judgment should be granted in Defendants' favor as to the equal protection claim insofar as it is based on an allegation that Plaintiff was denied access to the religious event because of his race.

///

///

///

**C. First Amendment Free Exercise**

    1. **Legal Standard**

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment … prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quotation marks and citations omitted, alteration original). "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve  legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of their religion." *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (citation omitted). "'A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id*. (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).

In analyzing the regulation of a prisoner's religious expression, the court is instructed to utilize the reasonableness factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). The *Turner* factors are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will

12

1  have on guards and other inmates, and on the allocation of prison resources generally"; (4) the

2  "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S.

3  at 89-91.

4        **2. Analysis**

5        The court has already determined that summary judgment should be granted in favor of

6  Carrasco and Baker as to this claim; therefore, the court must address the arguments made on

7  behalf of defendants Dalton and Chandler.

8        Defendants argue that Plaintiff was unable to attend one religious event because his name

9  was mistakenly left off of the list of authorized attendees, but he has not been prevented or inhibited

10  from attending other religious events or from practicing his religion; therefore, his religious

11  practice has not been substantially burdened.

12        Plaintiff argues he was denied the opportunity to participate in the sacred Jewish meeting

13  with the rabbis. He further asserts that he was seriously burdened because he was focused on

14  having the rabbi extend prayers on behalf of his ill mother.

15        Defendants have produced evidence that this was an isolated incident where Plaintiff was

16  denied the ability to attend a single religious event, but he sought and was granted permission to

17  attend various other religious events. Plaintiff does not dispute that he was otherwise able to attend

18  religious events and practice his religion.

19        The Ninth Circuit and many district courts within it have held that an isolated or sporadic

20  interference does not substantially burden the free exercise of religion. *See Canell v. Lightner*, 143

21  F.3d 1210, 1215 (9th Cir. 1998) (a "relatively short-term and sporadic" interference did not

22  constitute a substantial burden"); *Thomas v. Cox,* No. 3:13-cv-00508-RCJ-CBC, 2019 WL

23  2509023, at *7 (D. Nev. May 3, 2019), *report and recommendation adopted by* 2019 WL 2517788

(D. Nev. Jun. 17, 2019) (receiving a single improper kosher meal during Passover did not constitute a substantial burden on his right to free exercise of religion); *Torres Arboleda v. O'Banion,* No. 2:17-cv-0442-EFB P, 2019 WL 1206826 (E.D. Cal. Mar. 14, 2019) ("Courts in the Ninth Circuit (and elsewhere) have routinely held that the denial of a religious practice on a single, isolated occasion does not constitute a 'substantial burden' and thus does not violate the First Amendment."); *Pouncil v. Sherman*, No. 1:17-cv-00547-AWI-BAM (PC), 2018 WL 646105, at *3 (E.D. Cal. Jan. 31, 2018) (allegation that inmate was denied meals on one night of Ramadan did not state a free exercise claim); *Murie v. Crossroads Corr. Ctr.*, No. CV 17-00005-GF-BMM-JTJ, 2017 WL 2265145, at *3 (D. Mont. Feb. 24, 2017) (free exercise claim dismissed on screening because allegation that inmate was not allowed to attend a sweat lodge on a single occasion did not present a substantial burden); *Stidhem v. Schwartz*, 2:15-cv-00379-TC, 2017 WL 6887139, at *3 (D.Or. Oct. 23, 2017), *report and recommendation adopted by* 2018 WL 358496 (D.Or. Jan. 10, 2018) (summary judgment granted on plaintiff's free exercise claim because a less than one-day suspension of plaintiff's kosher diet did not amount to a substantial burden); *Smith v. Cruzen,* No. 14-CV-04791 LHK (PR), 2017 WL 4865565, at *4-5 (N.D. Cal. Oct. 26, 2017), *aff'd by* 735 Fed.Appx. 434 (9th Cir. 2018) (affirming grant of summary judgment because no dispute of material fact that one-time prohibition on engaging in evening congregational prayer was not a substantial burden on plaintiff's free exercise of religion); *Chapparo v. Ducart*, No. 14-CV-4955 LHK (PR), 2016 WL 491635, at *5 (N.D. Cal. Feb. 9, 2016), *aff'd* by 695 Fed.Appx. 254 (9th Cir. Aug. 14, 2017) (affirmed grant of summary judgment because four missed chapel services did not amount to a substantial burden on plaintiff's right of free exercise of religion); *Hampton v. Ayers*, No. CV 07-8130-RSWL (MAN), 2011 WL 2565358, at *15 (C.D. Cal. June 2, 2011), *report and recommendation adopted by* 2011 WL 2563246 (C.D. Cal. June 28, 2011) (summary judgment

granted because single incident of interrupting a religious service was not a substantial burden on plaintiff's religious exercise); *Howard v. Skolnik*, 372 Fed.Appx.781, 782 (9th Cir. 2010) (finding no genuine issue as to substantial burden on free exercise where claim involved two alleged incidents where prison personnel interfered with inmate's fasting); *Glover v. Evans*, No. C 07-2731 JSW (PR), 2007 WL 3022249, at *2 (N.D. Cal. Oct. 15, 2007) (religious exercise claim dismissed on screening because allegation of not being provided with religion-appropriate meal on a single occasion did not state a constitutional violation); *see also Rapier v. Harris*, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) (unavailability of non-pork tray for 3 meals out of 810 meals did not substantially burden inmate's exercise of religion); *Hankins v. N.Y. State Dep't of Corr. Servs.*, No. 0:07-CV-0408 (FJS/GHL), 2008 WL 2019655, at *5 (N.D.N.Y. Mar. 10, 2008) ("Courts from the Second Circuit have repeatedly found that an allegation that prison officials caused a prisoner to miss one religious service fails to state an actionable claim under the First Amendment.").

Plaintiff has not raised a genuine dispute of material fact in response to Defendants' submission of evidence that this was an isolated incident of interference with the ability to practice his religion. As such, the court concludes that the single incident does not rise to the level of a substantial burden. Therefore, summary judgment should also be granted in favor of Defendants as to the free exercise claim.

**D. IIED**

Defendants argue that Plaintiff cannot establish any extreme and outrageous conduct or intent to cause emotional distress or reckless disregard for causing emotional distress. They further argue that he cannot establish he actually suffered extreme emotional distress.

Plaintiff argues that he was subjected to serious mental and emotional distress due to the fact that his mother was seriously ill during that time frame and he was looking forward to speaking

with the rabbi and requesting healing prayers. He claims that he suffers from migraines and nerve issues as a result, and had to request to be scheduled to see the mental health doctor because he started losing sleep from the migraines since mother passed away. He states that it is his belief that if he would have been able to ask the rabbi to pray for his mother's condition, he would feel at peace.  He provides evidence that he submitted kites to be seen about anxiety and emotional distress, and was scheduled for mental health appointments.[3]

A plaintiff asserting an intentional infliction of emotional distress claim in Nevada must demonstrate: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 92 (Nev. 1981).

"[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26, 114 Nev. 1, 4 (1998) (citation and quotation marks omitted). "[P]ersons must necessarily be expected and required to be hardened … to occasional acts that are definitely inconsiderate and unkind." *Id*. (citation and quotation marks omitted). Additionally, the plaintiff must set forth "objectively verifiable indicia" establishing that he or she "actually suffered extreme or severe emotional distress." *Id*.

Here, taking the facts in the light most favorable to Plaintiff, Dalton told Plaintiff his invitation from Carrasco was fake, and Dalton and Chandler told Plaintiff they contacted Carrasco and he said Plaintiff was not invited to this religious event. While the court does not condone such

---

[3] Plaintiff's kites were made on August 11 and 17, 2018, and appointments were scheduled for October of 2018. (ECF No. 36 at 17-20.)

conduct (if true), the court cannot conclude it rises to the level of "that which is outside all possible bounds of decency" and would be regarded as "utterly intolerable in a civilized community." Instead, this falls more in the category of the "occasional act" that is inconsiderate, unkind, and certainly unprofessional. Therefore, summary judgment should be granted in Defendants' favor as to the IIED claim.

**E. Negligence**

The elements of a negligence claim in Nevada are: ""(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages." *DeBoer v. Sr. Bridges of Sparks Fam. Hosp.,* 282 P.3d 727, 732, 128 Nev. 406, 412 (Nev. 2012).

Defendants argue that since Plaintiff has been allowed to practice his religion, he cannot succeed on a negligence claim. Moreover, Defendants argue he has not suffered any actual damages.

Plaintiff maintains that Dalton (and Chandler) intentionally gave him false information about contacting Carrasco and having a false invitation to attend the religious event.

These are assertions of intentional and not "negligent" conduct, which directly contradict a claim of negligence. Therefore, summary judgment should be granted in Defendants' favor as to the negligence claim.

**F. Qualified Immunity**

The court has recommended that summary judgment be granted in favor of Defendants on all claims except for the equal protection claim against Dalton and Chandler asserting that they denied him access to the religious event while allowing other Jewish inmates to attend. The court will address Defendants' qualified immunity argument only as to that remaining claim.

1    "Qualified immunity protects government officers from liability for civil damages insofar

2    as their conduct does not violate clearly established statutory or constitutional rights of which a

3    reasonable person would have known." *Maxwell v. Cty.. of San Diego*, 708 F.3d 1075, 1082 (9th

4    Cir. 2013) (citation and quotation marks omitted). "To determine whether an officer is entitled to

5    qualified immunity," the court asks, in the order it chooses, "(1) whether the alleged misconduct

6    violated a right and (2) whether the right was clearly established at the time of the alleged

7    misconduct." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "For a constitutional

8    right to be clearly established, its contours must be sufficiently clear that a reasonable official

9    would understand that what he is doing violates that right." *Id.* (citation and quotation marks

10   omitted).

11   Defendants argue that no constitutional violation was committed, but even if it were, it was

12   not clearly established that declining to permit an inmate to attend an event for which his name

13   was not on the list of authorized attendees would violate his constitutional rights. (ECF No. 34 at

14   11:27-28, 12:1.)

15   Defendants' qualified immunity argument is hinged on the court believing Defendants'

16   version of events: that Plaintiff was denied access to the event simply because his name was not

17   on the list. In assessing qualified immunity, the court must view the facts in the light most favorable

18   to the Plaintiff. Here, that means that an inference could be drawn (in light of the evidence

19   presented by Plaintiff that Dalton and Chandler falsely told Plaintiff they contacted Carrasco and

20   confirmed he was not invited when he was) that this was not the only reason he was denied

21   admittance to the religious event. If there was no rational basis for denying Plaintiff admittance to

22   the event, the law was clear that intentionally treating him differently from the other Jewish

23

18

inmates allowed to attend the event violates the Equal Protection Clause. As a result, Defendants' motion should be denied insofar as they assert they are entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order that Defendants' motion for summary judgment (ECF No. 34) be **GRANTED IN PART AND DENIED IN PART** as follows: it should be granted as to all claims and all defendants except as to the equal protection claim in Count I against Chandler and Dalton asserting that they precluded him from attending the religious event and treated him differently from other Jewish inmates allowed to attend without a rational basis for doing so.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 18, 2019.

_William G. Cobb_
William G. Cobb
United States Magistrate Judge